# EXHIBIT A



**COMMONWEALTH OF MASSACHUSETTS**
**SUPERIOR COURT DEPARTMENT**

SUFFOLK, ss.                                Civil Action No. 1884 CV 03702 E

| | |
|---|---|
| DEXTER ANDREWS, RAYMOND DUNN, NUNO GOMES, TITUS ROYAL, MATTHEW SOLER, and NICHOLAS YOUNG, <br>      Plaintiffs <br><br> v. <br><br> AMAZON.COM, INC., <br><br>      Defendant | ) ) ) ) ) ) ) ) ) ) ) ) |

RECEIVED NOV 29 2018 SUPERIOR COURT CIVIL MICHAEL JOSEPH DONOVAN CLERK

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.    This lawsuit is brought by six Black and Latino delivery drivers, on behalf of themselves and others similarly-situated, who delivered for Defendant Amazon.com, Inc. ("Amazon") and were summarily terminated as a result of Amazon's racially discriminatory background check policy and practice.  Amazon directed the termination of Plaintiffs and numerous other similarly-situated delivery drivers in Massachusetts, without regard to these workers' successful record of performance and without any individualized assessment of their qualifications or their ability to perform the job.  Rather, these termination decisions were based solely upon past involvement in the criminal justice system and driving history ("background history").

1

2.      Amazon's policy and practice of terminating delivery drivers without regard to their successful job performance is impermissibly discriminatory in violation of M.G.L. c. 151B.  It is well documented that communities of color, including Black and Latino communities, are subjected to over-policing and traffic enforcement, and are arrested and convicted, at rates significantly higher than the White population. As a result, Amazon's policy and practice of terminating delivery drivers who are successfully performing their jobs, based solely on their background history, has a disparate impact on Black and Latino workers.

3.      Amazon's policy and practice is not justified by any business necessity. Indeed, Plaintiffs and others in the putative class were terminated even though they had been successfully performing their jobs. Even if Amazon's policy and practice were justified by business necessity, Amazon could satisfy that business necessity with less discriminatory alternatives, including the use of a more individualized assessment of driver qualifications and ability to perform the job.

## JURISDICTION AND VENUE

4.      Pursuant to M.G.L. c. 151B, Plaintiffs filed class complaints with the Massachusetts Commission Against Discrimination (MCAD) relating to the allegations in this case more than ninety days before the filing of this Complaint and have withdrawn those charges from the MCAD.

5.      This Court has jurisdiction over this matter pursuant to Superior Court Rule 29, because the amount in controversy exceeds $25,000.

6.     Venue in Suffolk County is proper under M.G.L. c. 223, § 1, because

Plaintiffs Andrews, Dunn, Royal, and Young reside in Suffolk County.

## PARTIES

7.     Plaintiff Dexter Andrews is an adult resident of Boston, Massachusetts. He

made deliveries for Amazon starting in or about June 2016, continuing until he was

summarily terminated in August 2016.

8.     Plaintiff Raymond Dunn is an adult resident of Boston, Massachusetts.

He made deliveries for Amazon starting in or about April 2016, continuing until he was

summarily terminated in August 2016.

9.     Plaintiff Nuno Gomes is an adult resident of Brockton, Massachusetts.  He

made deliveries for Amazon starting in or about April 2016, continuing until he was

summarily terminated in September 2016.

10.     Plaintiff Titus Royal is an adult resident of Boston, Massachusetts.  He

made deliveries for Amazon starting in or about November and December 2015, and

then again starting in or about June 2016, continuing until he was summarily

terminated in September 2016.

11.     Plaintiff Matthew Soler is an adult resident of Attleborough,

Massachusetts.  He made deliveries for Amazon starting in or about October 2016,

continuing until he was summarily terminated later that month.

12.     Plaintiff Nicholas Young is an adult resident of Boston, Massachusetts.

He made deliveries for Amazon starting in or about April 2016, continuing until he was

summarily terminated in August 2016.

13.     Defendant Amazon.com, Inc. is a foreign corporation based in Seattle. It sells and delivers a wide range of goods and products throughout the United States.

## FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS

14.     Amazon is the largest internet retailer in the world, with annual revenues approaching $200 billion.  Through its amazon.com website, Amazon sells and delivers a huge variety of goods and products to over 300 million customers worldwide.

15.     In order to make its deliveries, Amazon contracts with numerous delivery companies throughout Massachusetts and across the United States.  At all times relevant herein, contracting entities worked out of common warehouses that are run by Amazon.

16.     Although delivery drivers such as Plaintiffs are paid by the delivery companies, they are required to comply with Amazon's policies, procedures, and directions when making deliveries.  They typically drive vehicles that have an Amazon label, wear shirts and other apparel that feature the Amazon name and logo, have an Amazon handheld device, and communicate with Amazon dispatchers.

17.     Delivery drivers are required to consent to a background check regarding, among other things, past involvement in the criminal justice system and driving history ("background history").

18.     It is the policy and practice of Amazon to direct the termination of Amazon delivery drivers who do not meet Amazon's background history requirements, regardless of whether delivery drivers have been already successfully performing their job functions.  On information and belief, these terminations occur at Amazon's

4

instruction based solely on drivers' background history, without regard to drivers' successful record of performance for Amazon; without any individualized assessment of qualifications or ability to perform the job; and without giving delivery drivers any opportunity to explain their background history or describe why their successful record of performance or other factors make them qualified for continued employment.

19.     On information and belief, such terminations are part of a nationwide policy or practice of Amazon that has affected hundreds of delivery drivers in Massachusetts alone.

20.     It is well-documented that communities of color, including Black and Hispanic communities in Massachusetts and across the country, are subjected to policing and traffic enforcement, and are arrested and convicted, at rates significantly higher than the White population.  *See, e.g.,* U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Police Behavior During Traffic And Street Stops, 2011, available at https://www.bjs.gov/content/pub/pdf/pbtss11.pdf; *E. Pierson, C. Simoiu, J. Overgoor, S. Corbett-Davies, V. Ramachandran, C. Phillips, S. Goel. (2017) "A large-scale analysis of racial disparities in police stops across the United States"* available at https://5harad.com/papers/traffic-stops.pdf; Prison Policy Initiative, Massachusetts Profile, available at  https://www.prisonpolicy.org/profiles/MA.html. *See* Human Rights Watch, *Decades of Disparity: Drug Arrests and Race in the United States* 1 (2009) (*available at* http://www.hrw.org/sites/default/files/reports/us0309web_1.pdf).

21.     For this reason, Amazon's termination of delivery drivers based solely on background check information has a disparate impact on Black and Latino drivers, by

importing the racial disparities in the criminal justice system into the employment process.

22.     Terminating qualified employees based solely on background information eliminates talented employees from the workforce and results in the systematic termination of qualified Black and Latino delivery drivers.

23.     The U.S. Equal Employment Opportunity Commission (EEOC) has issued guidance specifically outlining how overly restrictive background checks can disparately impact communities of color. *See Enforcement Guidance on the Consideration of Arrest and Conviction Records In Employment Decisions Under Title VII of the Civil Rights Act of 1964* (Apr. 25, 2012).  As the EEOC has noted in describing disparate impact liability under parallel federal anti-discrimination laws, such liability attaches "where the evidence shows that a covered employer's criminal record screening policy or practice disproportionately screens out a [] protected group and the employer does not demonstrate that the policy or practice is job related for the positions in question and consistent with business necessity." *Id.* at Section V.  Factors relevant to whether a background check policy violates anti-discrimination law include what offenses are considered, the time elapsed since the offense, and the nature of the job in question. *See id.* at Section V(A).  The EEOC specifically emphasizes the importance of employers providing "an opportunity for an individualized assessment for people excluded by the [background] screen…." *Id.* at Section V(B)(4).

24.     Amazon has been or should reasonably have been aware of this EEOC guidance, yet has chosen to disregard it.

6

### Dexter Andrew's Experience of Racial Discrimination

25.     Mr. Andrews is a Black man.  He began performing deliveries for Amazon in or about June 2016.

26.     Mr. Andrews worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

27.     When Mr. Andrews was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

28.     At all times, he performed his delivery duties competently and without any disciplinary actions.

29.     On or about mid-August 2016, without prior warning, Mr. Andrews was terminated. On information and belief, he was terminated at Amazon's instruction based on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background

history or describe why his successful record of performance or other factors make him qualified for continued employment.

### Raymond Dunn's Experience of Racial Discrimination

30.    Mr. Dunn is a Black man.  He began performing deliveries for Amazon in or about April 2016.

31.    Mr. Dunn worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

32.    When Mr. Dunn was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

33.    At all times, he performed his delivery duties competently and without any disciplinary actions.

34.    On or about August 5, 2016, without prior warning, Mr. Dunn was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to

perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

### Nuno Gomes' Experience of Racial Discrimination

35.     Mr. Gomes is a Black (Cape Verdean) man.  He began performing deliveries for Amazon in or about April 2016.

36.     Mr. Gomes worked out of an Amazon warehouse in Dedham, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

37.     When Mr. Gomes was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

38.     At all times, he performed his delivery duties competently and without any disciplinary actions.

39.     On or about September 2016, without prior warning, Mr. Gomes was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of

performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

### Titus Royal's Experience of Racial Discrimination

40.     Mr. Royal is a Black man.  He began performing deliveries for Amazon in or about November and December 2015, and then again starting in or about June 2016.

41.     Mr. Royal worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

42.     When Mr. Royal was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

43.     At all times, he performed his delivery duties competently and without any disciplinary actions.

44.     On or about September 7, 2016, without prior warning, Mr. Royal was terminated. On information and belief, he was terminated at Amazon's instruction

based solely on his background history, without regard to his successful record of

performance; without any individualized assessment of his qualifications or ability to

perform the job; and without giving him any opportunity to explain his background

history or describe why his successful record of performance or other factors make him

qualified for continued employment.

### Matthew Soler's Experience of Racial Discrimination

45.     Mr. Soler is a Latino man.  He began performing deliveries for Amazon in

or about October 2016.

46.     Mr. Soler worked out of an Amazon warehouse in Milford,

Massachusetts. Although he was paid by another entity, he was required to comply

with Amazon's policies, procedures, and directions when making deliveries. He drove

a van that had an Amazon label, wore a shirt and hat that said Amazon, had an

Amazon handheld device, and communicated with Amazon personnel about deliveries.

47.     When Mr. Soler was hired to perform deliveries for Amazon, he was

required to consent to a background check regarding, among other things, his past

involvement in the criminal justice system and his driving history ("background

history"). He consented to the background check, and he was hired after the check was

performed, even though on information and belief the check showed one or more past

offenses in his background history.

48.     At all times, he performed his delivery duties competently and without

any disciplinary actions.

11

49.     On or about October 20, 2016, without prior warning, Mr. Soler was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

**Nicholas Young's Experience of Racial Discrimination**

50.     Mr. Young is a Black man.  He began performing deliveries for Amazon in or about April 2016.

51.     Mr. Young worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

52.     When Mr. Young was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

53.    At all times, he performed his delivery duties competently and without any disciplinary actions.

54.    On or about August 5, 2016, without prior warning, Mr. Young was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

### CLASS ALLEGATIONS

55.    Plaintiffs bring this action individually and on behalf of the following class: all Black and Latino individuals who were hired to perform Amazon deliveries in Massachusetts but who were subsequently terminated (during the period that begins three years before the filing of this Complaint and continuing to the date of class certification) because of Amazon's policies and practices related to background checks.

56.    On information and belief, numerous Black and Latino individuals in Massachusetts have been adversely affected by Amazon's background history employment policy and practice, and joinder of all of those individuals is impracticable.

57.    There are questions or law or fact common to all such individuals, including (a) whether Amazon's policy and practice has a disparate impact on Black and Latino individuals, (b) whether the policy and practice is justified by business necessity, and (c) whether there is a less discriminatory alternative that would have a

lesser disparate impact. The claims of the Plaintiffs are typical of the claims of other class members.

58.     Plaintiffs and their counsel will fairly and adequately protect the interests of the class. Indeed, Plaintiffs' counsel are experienced in employment and class action litigation. The public interest is served by a class proceeding based, among other things, on the importance of eliminating discriminatory policies that disproportionately impact disadvantaged communities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

59.     On or about January 31, 2017, Plaintiffs filed class complaints with the Massachusetts Commission Against Discrimination.  Plaintiffs amended their complaints on or about January 13, 2018.

## COUNT I

### M.G.L. c. 151B, § 4

60.     Plaintiffs allege and incorporate by reference the above paragraphs.

61.     M.G.L. c. 151B, § 4 makes it an unlawful practice for, among  "an employer, by himself or his agent, because of the race [or] color … of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

62.     The conduct of Amazon.com, Inc. as described above constitutes unlawful discrimination against the Plaintiffs in violation of M.G.L. c. 151B, § 4. This claim is brought pursuant to M.G.L. c. 151B, § 9.

14

## COUNT II

### M.G.L. c. 151B, § 4A

63.     M.G.L. c. 151B, § 4A makes it an unlawful practice "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter."

64.     The conduct of Amazon.com, Inc. as described above constitutes unlawful discrimination against the Plaintiffs in violation of M.G.L. c. 151B, § 4A. This claim is brought pursuant to M.G.L. c. 151B, § 9.

## COUNT III

### M.G.L. c. 151B, § 5

65.     M.G.L. c. 151B, § 5 makes it an unlawful practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

66.     The conduct of Amazon.com, Inc. as described above constitutes unlawful discrimination against the Plaintiffs in violation of M.G.L. c. 151B, § 5. This claim is brought pursuant to M.G.L. c. 151B, § 9.


WHEREFORE, Plaintiffs respectfully request this Court to:

A.      Certify the matter as a class action on behalf of the proposed class;

15

B.     Designate Plaintiffs Andrews, Dunn, Gomes, Royal, Soler, and Young as Class Representatives;

C.     Designate Plaintiffs' Counsel as Class Counsel;

D.     Restore Plaintiffs and Class Members to their positions as Amazon delivery drivers;

E.     Award damages to Plaintiffs and the Class for their lost wages and benefits, and for their emotional and mental distress;

F.     Award punitive damages to Plaintiffs and the Class;

G.     Declare that Amazon's background check policy and practice as described above violates 151B;

H.     Enjoin Amazon from implementing its background check policy and practice as described above;

I.     Award attorneys' fees and costs to Plaintiffs and the Class;

J.     Award pre- and post-judgment interest to Plaintiffs and the Class; and

K.     Grant such other relief as is just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury.

DEXTER ANDREWS, RAYMOND DUNN,
NUNO GOMES, TITUS ROYAL, MATTHEW
SOLER, and NICHOLAS YOUNG,

By their attorneys,

Stephen Churchill, BBO #564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
steve@fairworklaw.com

Oren Sellstrom, BBO #569045
Sophia Hall, BBO #684541
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 482-1145
osellstrom@lawyersforcivilrights.org
shall@lawyersforcivilrights.org

Dated: November 29, 2018

17

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1884CV03702 E | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Dexter Andrews et al vs. Amazon.com Inc | Michael Joseph Donovan, Clerk of Court |
|---|---|
| TO:<br><br>, | COURT NAME & ADDRESS<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

<u>STAGES OF LITIGATION</u>                               <u>DEADLINE</u>

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/27/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 03/29/2019 | |
| All motions under MRCP 12, 19, and 20 | 03/29/2019 | 04/29/2019 | 05/28/2019 |
| All motions under MRCP 15 | 03/29/2019 | 04/29/2019 | 05/28/2019 |
| All discovery requests and depositions served and non-expert depositions completed | 09/25/2019 | | |
| All motions under MRCP 56 | 10/25/2019 | 11/25/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/23/2020 |
| Case shall be resolved and judgment shall issue by | | | 11/30/2020 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.**

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**11/29/2018** | ASSISTANT CLERK<br>**Margaret M Buckley** | PHONE<br>**(617)788-8144** |
|---|---|---|

Date/Time Printed: 11-29-2018 09:28:11                                                                 SCV026\ 08/2018

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1884 cv 03702 E

*Dexter Andrews, et al.*, PLAINTIFF(S),

v.

*Amazon.com, Inc.*, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO ___*Amazon.com, Inc.*___. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Suffolk Superior* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, *Superior* Court, ___ **✗** ___ (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: *Fair Work, P.C., 192 South St., Ste. 450, Boston, MA 02111*

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

✗ *Three Pemberton Square, 12th Floor*
*Boston, MA 02108*

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on   11 | 29        , 20 18 .

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___          Signature: _____

N.B.   **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.